UNITED AIRCRAFT CORPORATION *v.* INTERNATIONAL
ASSOCIATION OF MACHINISTS ET AL.
(two cases)

LOISELLE, MACDONALD, BOGDANSKI, LONGO and BARBER, Js.

Argued June 5—decision released September 2, 1975

*Norman Zolot* and, of the District of Columbia bar, *Mozart G. Ratner,* with whom was *Burton S. Rosenberg,* for the appellants (defendants).

*S. Robert Jelley,* with whom was *Robert F. Cavanagh,* for the appellee (plaintiff).

LOISELLE, J.  These two appeals, which have been consolidated for presentation to this court, arise from a trial on remand in combined companion cases brought by the plaintiff, United Aircraft Corporation, against the four defendants, representatives of three different union organizational levels. The plaintiff had sought damages from the defendants, jointly and severally, in actions based on allegedly tortious acts committed in the course of illegal strikes at the plaintiff's Pratt & Whitney Division plants in East Hartford and Manchester and at its Hamilton Standard Division plants in Windsor Locks and Broad Brook.[1]

A detailed account of the events leading up to the strike which began on June 8, 1960, and of the events during the strike which terminated on August 8 and 9, 1960, is set forth in *United Aircraft Corporation* v. *International Assn. of Machinists,* 161 Conn. 79, 285 A.2d 330, cert. denied, 404 U.S. 1016, 92 S. Ct. 675, 30 L. Ed. 2d 663, the previous

---

[1] The plaintiff's plants in North Haven and Meriden and in West Palm Beach, Florida, are not involved in the present controversy.

appeal in these cases. The previous trial court found liability against the four defendants. In assessing damages, that court first determined the monetary value of the total strike loss sustained by the plaintiff because of a deprivation of a portion of its productive labor force. The total strike loss was based primarily on two elements: (1) excessive manufacturing costs owing to the diminution of the labor force, and (2) unabsorbed fixed overhead expenses, referred to as "wasted overhead," owing to diminution of the labor force. Having arrived at a figure representing the value of the total strike damage sustained by the plaintiff owing to deprivation of a portion of its productive labor force, that court then determined the portion of that figure which represented the loss directly due to the involuntary absence of employees because of fear and coercion as a result of the illegal, tortious acts attributed to the defendants. *United Aircraft Corporation* v. *International Assn. of Machinists, supra,* 100–102.

This court upheld that trial court's decision as to the liability of the four defendants and the award of punitive or exemplary damages, but remanded the case for reassessment of compensatory damages in accordance with the opinion which pointed out that the trial court was correct in basing its computation of damages on excessive manufacturing costs and wasted overhead during the strike period and in relying on evidence presented, but that it was in error in including the effects of tortious acts away from the premises of the plaintiff, in computing the time period, and in excluding the item of overtime hours worked during the strike period in the computation of wasted overhead. Ibid.

The remand directed as follows: "In computing the monetary value of the plaintiff's strike losses at the Pratt & Whitney Division plants and Hamilton Standard Division plants due to the involuntary absence of employees because of fear and coercion as a result of the illegal, tortious activities which occurred at these plants, the trial court should, on remand, determine the amount of absence from the Pratt & Whitney Division plants which was involuntary as the result of the illegal, tortious activities which occurred at those plants from June 8 to August 8 and 9, 1960, and the amount of absence from the Hamilton Standard Division plants which was involuntary as a result of the illegal, tortious activities which occurred at those plants from June 8 to August 8 and 9, 1960. On the basis of the figures representing the monetary value of the total strike losses sustained by the plaintiff at each of these divisions due to the loss of productive labor and the figures representing the aforementioned amount of involuntary absence the damage to which the plaintiff is entitled may be determined." Id., 104–105.

Upon remand, the trial court found that $4,149,151 was the total strike loss incurred during the strike period at Pratt & Whitney's East Hartford and Manchester plants, and that $2,304,718 was the total strike loss incurred during the strike period at Hamilton Standard's Windsor Locks and Broad Brook plants. It found that the plaintiff's strike loss at the Pratt & Whitney Division plants proximately caused by the defendants' tortious acts on the plant premises was 23.6 percent of the total strike loss of $4,149,151, or $979,200. It found that the plaintiff's strike loss at the Hamilton Standard Division plants proximately caused by the defendants' tor-

tious acts on the plant premises was 19.3 percent of the total loss of $2,304,718, or $444,811. Judgments were rendered for the plaintiff in these sums together with interest and costs. The defendants have appealed.

The court's finding, which has 401 numbered paragraphs covering 109 printed pages of the record, is the subject of an extensive attack by the defendants. No useful purpose would be served by a detailed discussion of these assignments of error. Suffice it to say that after laborious hours and days spent in examining and comparing the draft finding and the finding of the court with the long and detailed appendices, nine paragraphs of the draft finding have been added to the finding, and one paragraph of the finding has been deleted. None of those corrections materially affects the finding of the court which was detailed and comprehensive.

In accordance with the remand, the court, after finding excessive manufacturing costs and wasted overhead, determined the monetary value of the total strike loss sustained by the plaintiff as the first step in its assessment of damages. That determination, $4,149,151 for the Pratt & Whitney Division and $2,304,718 for the Hamilton Standard Division, is attacked by the defendants.

The principal source for establishing values for manufacturing costs and wasted overhead is exhibits in which the figures used were taken from the actual ledgers and payroll records of the plaintiff. The court found that the figures and computations in these exhibits were accurate and correct.

The court accepted the plaintiff's standard accounting system as a reasonable basis for com-

puting the plaintiff's excessive manufacturing costs and wasted overhead owing to the man-hours of labor lost. It relied on the evidence of the plaintiff's manufacturing costs for the period from January to May, 1960, as a base for computing excess manufacturing costs during the strike period. For this computation the court took into consideration six categories of Pratt & Whitney's shop losses: labor efficiency variance, overtime premiums, corrective work, training, spoiled work, and make or buy conversions. Those same categories, with the exception of training costs, were considered in computing Hamilton Standard's excess manufacturing costs. Other categories of shop losses, such as night shift premiums, third shift premiums and waiting time, were not included in the computation. Further, additional losses caused by the strike which could not be measured objectively, such as losses in the experimental shop, losses owing to the absence of indirect labor employees, and losses from strike disruptions after the strike, were not considered. The cost of wasted overhead at both divisions as found by the court is supported by the findings. Included in the calculation of wasted overhead was the item of overtime hours worked during the strike as directed by this court in the remand. *United Aircraft Corporation* v. *International Assn. of Machinists,* 161 Conn. 79, 101, 285 A.2d 330.

The defendants claim that items in these exhibits relied upon by the court were inaccurate and that the court was in error in accepting this evidence. The defendants were permitted to advance and pursue these claims despite the plaintiff's objections that they were beyond the mandate of this court's remand. The claims raised specifically concern (1) spoiled work and waiting time, being items

which relate to excess manufacturing cost, and (2) accelerated depreciation, general and administrative expenses, and work during vacation shutdown, being items which relate to wasted overhead. The court found that during the strike there was a high incidence of spoiled work; it accepted the spoiled work items in the exhibits. This is a matter of credibility. Waiting time was not considered in the computation of the plaintiff's losses. It was the opinion of the plaintiff's comptroller that he could not associate the cause of waiting time with the presence or absence of a strike and that waiting time was not a relevant factor. Consequently, it was not included either in the base period of January to May, 1960, or in the strike period. The court accepted this evidence. The court specifically found that accelerated depreciation as an expense was allowed by the United States government for tax purposes and contract purposes under certificates of necessity, and that the plaintiff regularly and consistently used accelerated depreciation in its regular accounting and profit and loss statements in 1960, and in the years prior thereto. The court also specifically found that general and administrative expenses included the costs of the accounting department, executive staff, and other management departments, and that these were fixed expenses and were an excessive burden on the low level of production. It concluded that these general and administrative expenses were properly calculated to determine wasted overhead. The court noted that no overhead was claimed during the vacation shutdown periods and found that it was not possible to calculate how many persons would have been expected to work had there been no strike or to calculate whether the hours actually worked were more

or less than the expectation, and that under these circumstances it was fair and reasonable for the plaintiff to exclude both the overhead and the direct labor hours during the vacation shutdown periods from its calculations of strike losses. The claims relative to these items all involve questions of fact; they were all resolved against the defendants. The findings on these matters are supported by the appendices and must stand. As to the accuracy of the items considered by the court in computing the plaintiff's excess manufacturing costs and wasted overhead, "[i]t was enough that the court relied on evidence which showed 'the extent of . . . [these items] as a matter of just and reasonable inference, although the result be only approximate.' *Story Parchment Co.* v. *Paterson Parchment Paper Co.,* 282 U.S. 555, 563, 51 S. Ct. 248, 75 L. Ed. 544; *Ball* v. *T. J. Pardy Construction Co.,* 108 Conn. 549, 551, 143 A. 855." *United Aircraft Corporation* v. *International Assn. of Machinists,* supra, 101. See also *Dunn Bros., Inc.* v. *Retail Clerks, Local 1529,* 69 Labor Cases ¶ 52,956 (Tenn. App.). The court properly computed excessive manufacturing costs and wasted overhead.

The defendants extensively and vigorously attack the court's findings and conclusions that 23.6 percent of the bargaining unit and direct labor absences during the strike period at the Pratt & Whitney Division and 19.3 percent of the bargaining unit and direct labor absences at the Hamilton Standard Division were owing to the tortious acts of the defendants. The principal, and pivotal, question raised by the defendants' attack is whether the court's determination of involuntary absences owing to tortious and coercive acts of the defendants was based on competent evidence, and specifi-

cally, whether the court could legally rely on the opinion of Morgan R. Mooney, the plaintiff's former vice president for industrial relations, as to the amount of involuntary absence during the strike period up to and including July 1, 1960. It is the defendants' contention that, on the factual evidence presented, the amount of involuntary absence attributable to strike violence cannot be estimated with "reasonable probability" or with any degree of assurance necessary to support the judgment of a court of law.

At the trial on remand, the plaintiff offered the testimony of a number of employee witnesses who testified that their absence during the strike was caused by the defendants' tortious acts at the plaintiff's plant premises. One hundred thirty-five employees testified as oral witnesses, and the transcripts of the testimony of seventy-three other employees who had testified at the previous trial were introduced into evidence. Mooney and Herbert R. Northrup, professor of industry at the Wharton School of Finance and Commerce, testified at great length as to their opinions of the amount of involuntary absenteeism during the strike period. Each produced tabulations of such opinions. Northrup's opinion based on his tabulations was that 33.8 percent of the absences at the Pratt & Whitney Division and 29.7 percent of the absences at the Hamilton Standard Division were caused by tortious acts at the plant premises. Mooney's opinion, based on his tabulations, was that 34.8 percent of the absences at the Pratt & Whitney Division and 29.2 percent of the absences at the Hamilton Standard Division were caused by the tortious acts at the plant premises. The total number of workers absent each day was not in dispute, having been derived by

deducting the number of workers present each day at the plants, less newly hired employees, from the number in the bargaining unit. The court found that the effects of the violence and mass picketing at the plaintiff's plant premises continued up to and including July 1, 1960. It also found that 23.6 percent of the bargaining unit absences at the Pratt & Whitney Division and 19.3 percent of the bargaining unit absences at Hamilton Standard Division were caused by the defendants' tortious acts at the plant premises. The court's findings with regard to the percentages of involuntary absences found coincide with Mooney's opinions for the period from the start of the strike, June 8, 1960, up to and including July 1, but do not include Mooney's opinion of involuntary absences from July 2 to the end of the strike period.

The defendants assert that the plaintiff's experts, Mooney and Northrup, were not qualified to state an opinion as to the number of absences at the plaintiff's plants caused by tortious acts on the plant premises during the strike. The court, however, found that both witnesses qualified as experts to render opinions regarding involuntary absenteeism during the strike.[2] "The determination of

---

[2] The court found the following: Herbert R. Northrup is professor of industry at the Wharton School of Finance and Commerce of the University of Pennsylvania. From 1964 to 1969, he was chairman of the department of industry of the Wharton School. He has a bachelor of arts degree in economics from Duke University, and master of arts and doctor of philosophy degrees in industrial relations and labor economics from Harvard University. His particular areas of specialization have been (1) race relations and civil rights in industry and (2) collective bargaining. He was a senior hearing officer with the war labor board during World War II. During the period from 1949 to 1961, he was employed in private industry, first as industrial relations consultant with Ebasco Services, a consulting firm, then as vice president for industrial relations for Penn-Texas

the qualification of an expert is largely a matter for the discretion of the trial court." *Coffin* v. *Laskau,* 89 Conn. 325, 329, 94 A. 370; *Oborski* v. *New Haven Gas Co.,* 151 Conn. 274, 280, 197 A.2d 73. The trial court's decision is not to be disturbed on appeal "unless that discretion has been abused, or the error is clear and involves a misconception of the law." 31 Am. Jur. 2d 531, Expert and Opinion Evidence,

Corporation, and finally as employer relations consultant with General Electric Company, where he was a member of the top industrial relations staff and was responsible for all employee relations in 70 plants employing 100,000 employees. He has published about 150 to 200 articles in various professional journals, and has written about 15 books. One of the books is a textbook entitled "Economics of Labor Relations," now in its seventh edition, which is the most widely used textbook in its field and is used at about 275 colleges and universities. He has written an article and a book dealing with the labor relations policies of General Electric Company, including General Electric's strike in October, 1960.

Morgan R. Mooney was vice president for industrial relations of United Aircraft Corporation at the time of the first trial in 1968, and retired from that position on July 31, 1972. At the time of the strike in 1960, he was personnel director of United Aircraft Corporation. He graduated from Yale University in 1929 with a bachelor of arts degree. Thereafter he was a graduate student at Yale studying labor economics and political science. From 1933 until 1935 he worked for the federal government as a labor compliance officer in the national industrial recovery administration. He then became deputy commissioner of labor in the Connecticut department of labor and factory inspection from 1935 to 1942. In that position he acted as secretary of the Connecticut state board of mediation and arbitration, and had the responsibility of investigating and attempting to mediate and settle strikes and other labor disputes throughout the state of Connecticut. He acted as investigator or mediator or both in about 75 to 100 strikes, and in so doing discussed strikes, strike methods, and strike measures with union leaders, members and negotiators. In 1942 he was employed by United Aircraft Corporation, first as assistant to the personnel director and then as assistant personnel director, before becoming personnel director in 1957. In his position as personnel director, Mooney was thoroughly familiar with all aspects of the 1960 strikes at Pratt & Whitney and Hamilton Standard, having been an eyewitness to picket line activities at all plants during the strike and a participant in all negotiations with the unions prior to and during the strike.

§ 31; *State* v. *Lally,* 167 Conn. 601, 609, 356 A.2d 897; *Nash* v. *Hunt,* 166 Conn. 418, 425, 352 A.2d 773; *Siladi* v. *McNamara,* 164 Conn. 510, 513, 325 A.2d 277. From the footnoted findings which recite the witnesses' qualifications and experience in the field of industrial relations, it is clear that they were reasonably qualified as experts to form and render opinions as to the effects of violence during a strike. The court did not abuse its discretion in ruling them to be experts, qualified to render opinions on the issues in this case.

The defendants claim that even though Northrup and Mooney may be found to be experts in their field, their testimony should not have been admitted as there was no factual basis for their opinions. It is the defendants' position that the only competent evidence which could support a finding of the amount of involuntary absences owing to strike violence was the testimony either of the absentees themselves or of a representative sample of all the employees. The court found that the group of employee witnesses who testified or whose testimony was received into evidence by transcripts was not a representative sample of all the employees employed in 1960, in a statistical or scientific sense. The court further found that "[i]n view of the practical and legal problems of obtaining reliable data from a statistically representative sample of absentees either during or immediately after the strike . . . at no time during or after the strike was plaintiff able to obtain reliable data from a statistically representative sample of absentees for introduction into evidence." The defendants argue that, in light of these findings, the only basis for a judgment of damages was that group of absentee witnesses whose testimony as to the amount of time they lost

from work owing to the tortious acts of the defendants was heard by the court. The court, however, also considered the testimony of the two experts, and it is that consideration which is under attack.

In the previous opinion, this court observed that the trial court determined the percentage of employees who stayed away involuntarily from their employment primarily on the basis of Northrup's testimony. The court also commented that "[w]hile expert opinion would be relevant provided the court accorded it persuasive weight as was done in these cases, other methods of determining the elements of involuntary absence of equal or greater weight might be resorted to such as a representative sampling of employees who refrained from work. The evidence to be relied on for arriving at a reasonable approximation is for the court to decide." *United Aircraft Corporation* v. *International Assn. of Machinists,* 161 Conn. 79, 105–106, 285 A.2d 330. In view of the trial court's finding that a statistically representative sample of absentees was not obtainable, the court did not, as claimed by the defendants, err in considering the opinions of the two experts who testified for the plaintiff.

This state has long had a simple and workable standard for the admissibility of expert opinion. "The true test of the admissibility of such testimony is not whether the subject matter is common or uncommon, or whether many persons or few have some knowledge of the matter; but it is whether the witnesses offered as experts have any peculiar knowledge or experience, not common to the world, which renders their opinions founded on such knowledge or experience any aid to the court or the jury in determining the questions at issue." *Taylor*

v. *Monroe,* 43 Conn. 36, 44, cited with approval in *Schomer* v. *Shilepsky,* 169 Conn. 186, 191, 363 A.2d 128. Implicit in this standard is the requirement, later articulated, that the expert's knowledge or experience must be directly applicable to the matter in issue. *Siladi* v. *McNamara,* 164 Conn. 510, 513–14, 325 A.2d 277.

Mooney based his opinions upon his entire personal experience and his personal knowledge, particularly that of the strike violence. He had viewed movies at the plaintiff's plant premises of the violence and had personally observed the violence and its impact upon the employees arriving at the premises to work. He also observed those employees who turned around at the gate and left. In arriving at an opinion as to the number of involuntary absences during the strike, he took into account his estimate of "committed strikers," those strikers who were committed to staying out for the duration of the strike. He conservatively estimated the committed strikers by relating his estimate to the number of union members who voted to strike, the average number of union members paid strike benefits, and the number of strikers who registered to return to work at the end of the strike. He also took into consideration, but did not quantify, employees who wanted to wait and see the outcome of the strike, employees who did not want to alienate fellow employees, employees who went out on strike but returned for economic reasons, and employees who were absent because of fear created by tortious acts committed off the premises.

Northrup based his opinion on his own experience and research over the years and on assumptions in a hypothetical question put to him, which

included substantially the same factors as those relied upon by Mooney, including a review of the filmed strike violence.

The defendants' experts, authorities in labor, economics, social sciences, political sociology, and psychology, each testified that the plaintiff's expert witnesses' opinions were speculative and mere guesses. It was their opinion that the only source of reasonable approximation was data based upon accurately ascertained subjective motivation of each absent employee which could be obtained only through interview or testimony, with results of varying degrees of accuracy. All testified that, except by examining the employees' actual reasons, there is no probative source of evidence to support any reference as to the reasonably approximate quantum of involuntary absences on any day or on all days of the strike. The court did not accept the testimony of the defendants' experts as to the opinions of Mooney and Northrup. The fact that the subjective motivation or state of mind, in this case the absentees' fear, could be inferred by the trier from other facts is a well settled rule of evidence. Frequently the only method of establishing what lay in the mind of a person when he acted is through such an inference. *State* v. *Moynahan,* 164 Conn. 560, 579, 325 A.2d 199, cert. denied, 414 U.S. 976, 94 S. Ct. 291, 38 L. Ed. 2d 219; *Hennessey* v. *Hennessey,* 145 Conn. 211, 214–15, 140 A.2d 473.

The defendants argue that it is apparent that the court rejected Northrup's opinion and adopted a portion of Mooney's opinion. Neither the finding nor the memorandum of decision indicates that the court rejected the evidence of the employee witnesses, the opinion of Northrup or a portion of

Mooney's opinion. It is evident that the court placed more reliance on a portion of Mooney's opinion, that is, his opinion of absences attributable to the tortious acts of the defendant from the beginning of the strike to and including July 1, 1960. The court was concerned with reasonable probabilities. *United Aircraft Corporation* v. *International Assn. of Machinists,* 161 Conn. 79, 103, 285 A.2d 330; *Sheiman* v. *Sheiman,* 143 Conn. 222, 225, 121 A.2d 285. The circumstance was not one in which all factors could be proved with mathematical precision. What was cited in the previous appeal (p. 104) is worth reiterating here: "Where a defendant has by his wrongful conduct made the calculation of damages difficult, he will not be heard to urge such difficulty as a reason for not assessing by approximation." *Crowell* v. *Palmer,* 134 Conn. 502, 510, 58 A.2d 729; see also *Valitsky* v. *Valitsky,* 168 Conn. 264, 265, 363 A.2d 60; *Baker* v. *Baker,* 166 Conn. 476, 489, 352 A.2d 277. "From the very nature of the situation, the amount of loss cannot be proved with exactitude and all that can be required is that the evidence, with such certainty as the nature of the particular case may permit, lay a foundation which will enable the trier to make a fair and reasonable estimate." *Ball* v. *T. J. Pardy Construction Co.,* 108 Conn. 549, 551, 143 A. 855; see also *Collens* v. *New Canaan Water Co.,* 155 Conn. 477, 490, 234 A.2d 825. Considering the experience and knowledge of Northrup and Mooney and the facts upon which their opinions were based, the court did not rely unreasonably upon their opinions, particularly those of Mooney, so as to make its decision an error of law.

The defendants further argue that as the court adopted Mooney's estimate of absences from tor-

tious conduct of the defendants for the period prior to and including July 1, 1960, but rejected his estimate of absences during the subsequent period of the strike, this rejection fatally undercut his pre-July 1 opinion and makes the court's reliance upon that opinion worthless. The finding of the court that the effects of the violence and mass picketing at the plaintiff's plants continued up to and including July 1, 1960, is attacked by the defendants as unsupported by the evidence. The tabulations of daily absences from both divisions of the plaintiff during the strike period clearly show a definite leveling off of absences from July 1 to the termination of the strike. In examining the appendices in support of this finding, the testimony of Mooney is significant in his explanation of the leveling off of absences after July 1. It was his opinion that, in the period after July 1, employees who were kept out of work because of the tortious acts of the defendants simply were not going to come back until the strike was over. It is apparent that the court did not reject Mooney's opinion as to the number of persons who were still affected by fear after July 1, but the court's reasoning is clearly enunciated in its memorandum of decision wherein it is stated: "Taking into consideration the injunction of June 13, 1960, a similar injunction issued by the U.S. District Court of this State, the cessation of film taking by the plaintiff of picket activity; the withdrawal of the state police; the widespread publicity both on T.V., radio and the newspapers of the issuance of the injunctions, I am not persuaded that the after-effects of the fear induced by the tortious acts of the defendants caused involuntary absences after the week ending July 1, 1960. Nor can I find that after that date the tortious acts hitherto referred

to which continued down to the end of the strike were a proximate cause of the involuntary absences." In weighing the testimony of an expert, the trier of fact may accept part of the testimony of an expert without being bound by all of the opinion of an expert. *Northeastern Gas Transmission Co.* v. *Tersana Acres, Inc.,* 144 Conn. 509, 512, 134 A.2d 253; *Clark* v. *Haggard,* 141 Conn. 668, 674, 109 A.2d 358. The court was not in error in finding that after July 1, the plaintiff did not prove the proximate causation of the tortious acts to the involuntary absences. *Robinson* v. *Southern New England Telephone Co.,* 140 Conn. 414, 418–19, 426, 101 A.2d 491; *Kilduff* v. *Kalinowski,* 136 Conn. 405, 407–408, 71 A.2d 593. This determination did not affect or destroy the weight which the court gave to Mooney's testimony and opinion concerning that period between the commencement of this strike and July 1, 1960.

The calculations of the percentages of absences due to the tortious acts of the defendants as determined by the court as related to the monetary value of the total strike losses sustained by the plaintiff at each of its divisions were supported by the evidence and in accordance with law and were determined in conformity with the remand of this court.

There is no error.

In this opinion the other judges concurred.