RUSSELL F. PETERSON ET AL. *v.* TOWN OF OXFORD ET AL.

(10076)

SPEZIALE, C. J., PETERS, HEALEY, PARSKEY and SHEA, Js.

Argued January 10—decision released April 26, 1983

*Robert C. Flanagan,* with whom was *Eugene A. Skowronski,* for the appellant (named defendant).

*Richard A. Volo,* for the appellees (plaintiffs).

PARSKEY, J.   The plaintiffs, Russell and Diane Peterson, brought suit against the town of Oxford and Patrick Blomberg, Inc., for damages resulting from the drainage of water over their property. After a trial to the court, judgment was rendered in favor of the plaintiffs against both defendants. Only the defendant town of Oxford has appealed.

The plaintiffs purchased lot 68 in section two of Quaker Hill subdivision in Oxford, Connecticut,

from Pat Blomberg, Inc. on March 21, 1969. This lot abutted a public street in the town of Oxford known as Carriage Drive.

The lot was at the northerly end of the subdivision and was the lowest point thereon. The brook which was the subject of the suit flows south to north from the lands above the plaintiffs, then under Carriage Drive and onto the plaintiffs' property. The brook is escorted under Carriage Drive by a thirty inch diameter pipe maintained by the town.

The brook enters the plaintiffs' lot on the east side and runs easterly for about ninety feet and, then in a gradual curve, circles the rear of the plaintiffs' home in a northwesterly direction, leaving the property on the northwest side. The location of the defendant's home and garage on lot 68 was selected by Blomberg. He constructed the foundation and shell of the plaintiffs' house. Blomberg also designed the plaintiffs' driveway, originally installing a single eighteen inch diameter pipe to guide the brook under said driveway.

When the plaintiffs purchased the lot the brook was about two feet wide and two inches deep. At the time of trial, however, the brook had grown into a watercourse that varied in depth from six inches to two feet and that was up to eight feet wide in places. This growth was representative of a forty percent increase in flow.

The deed that the plaintiffs received from Pat Blomberg, Inc., reserved certain drainage rights in the plaintiffs' property.[1] In 1969, when the plain-

---

[1] The deed by which the plaintiffs acquired ownership indicated that the conveyance was:

"Subject to: Riparian rights of adjoining owners in and to the free and unobstructed flow of the waters of the existing brook on

tiffs purchased their lot, there were only four or five homes in the subdivision. The subdivision map, however, contemplated seventy-seven lots and the construction of three additional roads known as Old Farm Road, Surrey Lane, and Red Barn Road.

Carriage Drive had been accepted as a public street in September 1967. Surrey Lane and Old Farm Road were accepted by the town in November, 1972. The major portion of Red Barn Road was accepted by the town in August, 1972, with the final portion being accepted in 1978. The town, by accepting these roads as public streets, accepted the appurtenant storm drainage system. Most of the water from these public streets drains into the brook which runs through the plaintiffs' property.

In 1973, after the completion of the subdivision roads, the brook began to cause flooding and erosion on the plaintiffs' property. As a result of the plaintiffs' complaints, Blomberg installed a second eighteen inch diameter pipe under the plaintiffs' driveway. The depth and speed of the brook would increase greatly during a rainfall depending upon the severity of the rain.[2] The pipes were not sufficient to carry the water flow. On at least one occasion the brook flooded the plaintiffs' garage. The sides and banks of the brook eroded badly.

the premises in question as shown on said map, together with the drainage rights of others in said existing brook as shown on said map."

The map referred to in the deed was the map entitled "Final Map Section Two Quaker Hill" which was approved by the Oxford Planning and Zoning Commission on February 10, 1966, and on which map the town of Oxford was granted an easement for purpose in and to the brook which crossed lot #68.

[2] The trial judge had the unique opportunity to observe the brook one day prior to a rainfall and again immediately thereafter. The court noted that although the particular eight hour rainfall involved could not be termed heavy, the brook had risen considerably and the water velocity was swifter.

The court found that the erosion problem suffered by the plaintiffs was caused by the increased flow of water in the brook and that this should have been foreseen by the town when the subdivision roads were accepted. The court further found that the town could easily have prevented the erosion problem by insisting upon precautionary measures such as riprapping prior to accepting the subdivision roads.

The defendant has raised six claims of error in this appeal. It argues that the trial court erred: (1) in finding that the town violated General Statutes § 13a-138; (2) in finding that the defendant created and maintained a nuisance by draining water in a "natural" watercourse through the plaintiffs' land; (3) by not applying the doctrine of comparative negligence against the plaintiffs based on their constructing and maintaining an inadequate drainage system beneath their driveway; (4) by not finding that the defendant had an absolute right to drain water in the watercourse flowing through the plaintiffs' property by virtue of the grant, reservation or easement contained in the plaintiffs' deed; (5) in not finding the defendant to be acting in the performance of a governmental function and therefore immune from liability; and (6) in finding that the defendant was liable for erosion damage without making a finding of what portion of the erosion was due to natural forces and what portion was proximately caused by the defendant's conduct.

Because the defendant's easement and nuisance claims are related and because we believe that the easement accorded the defendant the broadest drainage rights we will consider these issues first.

The use of an easement must be reasonable and as little burdensome to the servient estate as the

nature of the easement and the purpose will permit. *Center Drive-in Theatre, Inc.* v. *Derby,* 166 Conn. 460, 465, 352 A.2d 304 (1974). The owner of an easement has all rights incident or necessary to its proper enjoyment, but nothing more. Id., 464; *Great Hill Lake, Inc.* v. *Caswell,* 126 Conn. 364, 367, 11 A.2d 396 (1940). The right of an owner of an easement and the right of the owner of the land are not absolute, but are so limited, each by the other, that there may be a reasonable enjoyment of both. 2 Thompson, Real Property (1980 Replacement) § 427. The interests of the owner of the easement often conflict with the interests of the owner of the burdened estate. By law, however, each of the parties owes certain duties to the other. *Center Drive-In Theatre, Inc.* v. *Derby,* supra, 464.

The court below found that there was no evidence which indicated that the brook was intended to be enlarged in any manner by the use of the easement. The court found, however, that the defendant had increased the volume of water in the brook and that the defendant's use and maintenance of the easement constituted a nuisance. We find no error.

In *Page Motor Co.* v. *Baker,* 182 Conn. 484, 438 A.2d 739 (1980), this court adopted the reasonableness of use rule with respect to surface waters. The reasonable use rule was considered preferable because of its flexibility. The issue of reasonableness is a question of fact to be determined on a case by case basis, considering all the relevant circumstances, including such factors as the amount of harm caused, its foreseeability, the purpose or motive with which the act was done, and the consideration of whether the utility of the use of the land outweighed the gravity of the harm resulting. Id., 490, 494 (*Bogdanski, J.,* dissenting); see

*Ferri* v. *Pyramid Construction Co.,* 186 Conn. 682, 685–87, 443 A.2d 478 (1982). We see no reason why such a weighing analysis should not be used in the instant case.

An easement must be used reasonably. Rights must be exercised with reference to the rights of others. *Page Motor Co.* v. *Baker,* supra, 489. "Current social policy dictates that a person no longer have unfettered control of his land. In an urbanized state such as Connecticut it would be unjust for [an easement owner] to ignore the harmful consequences of his actions. The reasonable use rule permits the costs of land development to be allocated to the developer rather than the adjoining landowners." Id., 496 (*Bogdanski, J.,* dissenting).

Here, the trial court found that the defendant's use of the easement exceeded its intended scope; that the plaintiffs must fear a flooding problem with each rain; that the increased flow was causing erosion to the plaintiffs' land; that this increased flow was foreseeable; and that the defendant could easily have prevented the erosion to the plaintiffs' property by taking preventive measures prior to accepting the roads in the subdivision. Further, the court found that the brook was not in its natural location, that the town approved the subdivision plan which erroneously represented the position of the brook on the plaintiffs' lot, and that this error in the map should have been discovered by the town and a correction made prior to acceptance of the map.

The court, weighing the conflicting interests of the parties, could justifiably have concluded that, although the drainage through the plaintiffs' prop-

erty was necessary and pursuant to an easement, the defendant had not taken reasonable care to prevent unnecessary and foreseeable erosion damage to the plaintiffs' property caused by its use and maintenance of the artificial drainage system.

In finding that the defendant had created and maintained a nuisance the trial court necessarily had to find that the town's use of the easement was unreasonable. This is so because to constitute a nuisance in the use of land, it must appear not only that a certain use by its very nature is likely to cause injury but also that it is unreasonable or unlawful. *Laspino* v. *New Haven,* 135 Conn. 603, 605, 67 A.2d 557 (1949).

The determination of reasonableness is for the trier of fact; see *Kostyal* v. *Cass,* 163 Conn. 92, 100, 302 A.2d 121 (1972). On these facts we cannot find that his determination was clearly erroneous; *Pandolphe's Auto Parts* v. *Manchester,* 181 Conn. 217, 221–22, 435 A.2d 24 (1980).

The defendant next asserts as error the trial court's finding that the town was in violation of General Statutes § 13a-138.[3] By pressing this claim, the defendant hopes to defeat the plaintiffs' statutory cause of action.[4] It is the defendant's position

[3] General Statutes (Rev. to 1979) § 13a-138 provides: "Sec. 13a-138. HIGHWAYS MAY BE DRAINED INTO PRIVATE LANDS. Persons authorized to construct or to repair highways may make or clear any watercourse or place for draining off the water therefrom into or through any person's land so far as necessary to drain off such water and, when it is necessary to make any drain upon or through any person's land for the purpose named in this section, it shall be done in such way as to do the least damage to such land; provided nothing in this section shall be so construed as to allow the drainage of water from such highways into, upon, through or under the yard of any dwelling house, or into or upon yards and enclosures used exclusively for the storage and sale of goods and merchandise."

[4] The plaintiffs' complaint sounded in nuisance and statutory violation.

that the existence of the easement precludes the operation of the statute upon the facts of this case.

At the outset we must observe that it is by no means clear from a reading of the memorandum of decision that the judge, in fact, assessed liability predicated on the defendant's violation of the statute. The statute specifically provides that "nothing in this section shall be so construed as to allow the drainage of water from . . . highways into, upon, through or under the yard of any dwelling house . . . ." The defendant has not challenged the court's finding that the plaintiffs' property is the yard of a dwelling house. Upon the facts, the easement accorded the defendant the broadest possible drainage rights. Because we have already affirmed the judgment for the plaintiffs based on the defendant's unreasonable use of the easement, it is unnecessary to review this conclusion because it cannot affect the final result. *Covino* v. *Pfeffer,* 160 Conn. 212, 217, 276 A.2d 895 (1970); *Fritz* v. *Mazurek,* 156 Conn. 555, 561, 244 A.2d 368 (1968).

The defendant next assigns as error the trial court's finding that the town was not immune from liability for damages to the plaintiffs' property. The town contends that it is not liable for consequential damages incident to the discharge of its governmental functions of draining surface waters from its highways and approving subdivisions.

The short answer to this claim was set forth by this court in *Spitzer* v. *Waterbury,* 113 Conn. 84, 154 A. 157 (1931). Therein, the court noted that "[w]here . . . the plan of construction [adopted] is such as necessarily results in a nuisance to abutting property owners, or is so obviously inadequate as necessarily to result in a direct trespass upon their property, the municipality cannot claim

immunity, since such a result would constitute an appropriation of property without compensation." Id., 89; see *Southern New England Ice Co.* v. *West Hartford,* 114 Conn. 496, 504, 159 A. 470 (1932).

The defendant's remaining issues focus on the award of damages. The town asserts that the court erred in finding the defendant liable for the erosion damages without determining what erosion was natural and what erosion was caused by the defendant. Without benefit of case citation, the defendant argues that it should not be held liable for that quantum of erosion that was "inevitable in the maturation process of the natural watercourse . . . ."

This claim is without merit. The trial judge specifically found, and the defendants do not challenge,[5] that the watercourse on the plaintiffs' property was moved from its original course during the construction of the subdivision. This being so, the defendant will not be heard to deny that the erosion to the plaintiffs' property along the banks of the displaced watercourse was proximately caused by its action. "The existence of the proximate cause of an injury is determined by looking from the injury to the negligent act complained of for the necessary causal connection. *Collins* v. *City National Bank & Trust Co.,* 131 Conn. 167, 171, 38 A.2d 582 [1944]. If a defendant's negligence was a substantial factor in causing the plaintiff's injury, the defendant would not be relieved from liability for the injury even though another force concurred

[5] In its brief the defendant appeared to be asserting that the brook flowing through the plaintiffs' property was a natural watercourse and that the defendant neither made nor cleared any watercourse or drain onto or through the plaintiffs' property. At oral argument, however, defendant's counsel indicated that they were not challenging the trial court's finding that the brook on the plaintiffs' property had been moved.

to produce it. *Miranti* v. *Brookside Shopping Center, Inc.*, 159 Conn. 24, 29, 266 A.2d 370 [1969]." *Magarian* v. *Bessoni*, 160 Conn. 442, 445, 280 A.2d 357 (1971) ;[6] see *Ferri* v. *Pyramid Construction Co.*, supra, 687–88.

The defendant asserts as its final claim of error that the court erred in not considering the comparative negligence of the plaintiffs. It is the town's position that any damage caused by the failure of the pipes beneath the driveway is solely attributable to the plaintiffs and the defendant Blomberg, and that the trial court failed to consider this comparative negligence in finding the town liable to the plaintiffs in the amount of $7000.

The court found that the damage to the plaintiffs' property was repairable and accordingly awarded the cost of repair as damages. See *Falco* v. *James Peter Associates, Inc.*, 165 Conn. 442, 446, 335 A.2d 301 (1973). The plaintiffs were awarded a total of $13,300 in damages. Of this figure, $7000 was assessed against the town and the remaining $6300

[6] Had the watercourse been natural in all respects, the result would not be different. Here the erosion occurred due to a foreseeable increase in water flow and velocity. For an a fortiori example, see 2 Restatement (Second), Torts § 450 and illustration No. 1 set forth below:

"§ 450. HARM INCREASED OR ACCELERATED BY EXTRAORDINARY FORCE OF NATURE

"The extraordinary operation of a force of nature, which merely increases or accelerates harm to another which would otherwise have resulted from the actor's negligent conduct, does not prevent the actor from being liable for such harm.

"1. The A Coal Company deposits mine refuse on the banks of a mountain stream, so close to the water that it is likely to be carried down the stream and deposited upon lower riparian lands by the normal spring and autumn freshets. A cloudburst causes an extraordinary flood, which carries the refuse with extraordinary speed and in extraordinary volume upon the land of B. The negligent piling of the mine refuse is the legal cause of the entire harm done to B's land."

was assessed against Blomberg.[7]  The court found the town liable in that it failed to take precautions to limit erosion on the plaintiffs' land and because it increased the amount of water flowing upon the plaintiffs' land.  Blomberg's liability, however, was predicated on the court's findings that Blomberg chose the location of the plaintiffs' house and garage; that he recommended and installed the pipes under the driveway and that these pipes were insufficient to handle the increased flow of water in the brook.

Any negligence of the plaintiffs' in this case must necessarily have been imputed from the actions of Blomberg.  At trial, the court heard testimony from one William Griffin of the Century Construction Company.  Griffin gave several estimates of the cost to repair the plaintiffs' property.  These estimates were typewritten and submitted as a defendant's exhibit.  Estimate No. 3 incorporated in this exhibit was in the amount of $13,300.  The length of the affected brook was approximately ninety feet.  The estimate called for the installation of forty-two feet of pipe to replace the existing pipe under the driveway.  Although the court's calculations were not included in the memorandum, it appears that the court arrived at a fair approximation of damages by determining what percentage the forty-two feet of pipe was of the ninety feet of brook and reduced the town's liability by this percentage.[8]  From the very nature of the situation, the amount of loss cannot be proved with exactitude and all that can be required is that the evidence, with such certainty as the nature of the case may permit, lay a foundation which will enable a trier to make a fair and

---

[7] As previously noted, Blomberg has not appealed.

[8] i.e., $42 = .4666666\%$ of 90 (Read 47%)

47% of $13,300. $= $6251$. (Read $6300)

reasonable estimate. *United Aircraft Corporation v. International Assn. of Machinists,* 169 Conn. 473, 488, 363 A.2d 1068 (1975), cert. denied, 425 U.S. 973, 96 S. Ct. 2172, 48 L. Ed. 2d 797 (1976); *Ball v. Pardy Construction Co.,* 108 Conn. 549, 551, 143 A. 855 (1928).

It is obvious, therefore, that the town was given the benefit of a setoff due to Blomberg's action and is entitled to no more.

There is no error.

In this opinion the other judges concurred.