ABINGTON LIMITED PARTNERSHIP *v.* TALCOTT MOUNTAIN SCIENCE CENTER FOR STUDENT INVOLVEMENT, INC., ET AL.

SUPERIOR COURT       JUDICIAL DISTRICT OF       FILE NO. 519796S
HARTFORD-NEW BRITAIN AT HARTFORD

Memorandum filed April 18, 1994

*Levy & Droney,* for the plaintiff.

*Pepe & Hazard,* for the named defendant.

*George Brodigan,* for the defendant Catherine Vidal Smith.

*Clayman, Markowitz, Pinney & Baram,* for the defendant Arch Communications et al.

*Carmody & Torrance,* for the defendant Connecticut Light and Power Company.

*Robinson & Cole,* for the defendant Metro Mobile Centers of Hartford, Inc.

*Mayo, Gilligan & Zito,* for the defendant Fleet National Bank of Connecticut.

HON. ROBERT SATTER, STATE TRIAL REFEREE. The defendant Talcott Mountain Science Center for Student Involvement, Inc. (Science Center), moves for summary judgment in this action brought by the plaintiff for a permanent injunction to restrain the Science Center from using a power line easement for the purpose of supplying electricity to a subsequently acquired portion of its land.

The complaint alleges three counts against the Science Center: (1) trespass, (2) misuse and (3) overburdening of an easement. The Science Center moves for summary judgment on each of these counts.

The essential facts, to which the parties have stipulated, are as follows. In 1955, by way of condemnation for use as a Nike missile site, the federal government acquired title to approximately seventy-two acres of land atop Talcott Mountain in the towns of Simsbury, Avon and Bloomfield, together with safety, line of sight, access road and power line easements. The power line easement that is the subject of this action was acquired over a strip of land thirty feet in width and 325 feet in length in Avon, formerly owned by The Hartford Times, Incorporated, as "[a] perpetual easement and right of way for the construction, installation, maintenance, repair, operation, patrol, replacement and/or removal of overhead pole and

underground telephone and electric power lines, with all necessary fittings and appliances thereto . . . "

When the use of the land as a Nike missile site terminated, the federal government sought to dispose of the property, pursuant to the Federal Property and Administrative Services Act of 1949; 40 U.S.C. § 471 et seq.; for "school, classroom or other educational use." 40 U.S.C. § 484 (k) (1).

The Science Center applied under that act for a portion of the federal land. As a result, 6.34 acres of the land located in Avon and Bloomfield (federal parcel), together with access and power line easements, were transferred by the federal government to the town of Avon in April, 1967. For a time the town leased them to the Science Center for its programs and then, in June, 1975, conveyed the federal parcel to the Science Center.

Under a special act of the General Assembly, the state, in January, 1980, conveyed approximately 13.8 acres (state parcel) to the Science Center. This state parcel surrounds the federal parcel and abuts the plaintiff's land. In the late 1980s the Science Center began planning the construction of new educational facilities on the state parcel. These were completed in 1991 at a cost of $2.6 million.

In 1987, the plaintiff obtained title to 95 acres atop Talcott Mountain, subject to the power line easement here in issue. In January, 1988, the plaintiff prepared a master plan for the development of an exclusive residential subdivision on a portion of its property. The affidavit of Michael Konover "authorized representative" of the plaintiff, however, states that "[t]he primary purpose of acquiring the Abington property was so that I could build a 'dream house' for my family." Konover goes on to imply that the new buildings of the Science Center, including a planetarium, will spoil the

"secluded and bucolic nature" of his land and his "commanding view to the west over the Farmington Valley and to the east over Hoe Pond and beyond."

The transmission lines over the power line easement provide electricity for Science Center buildings located on the federal parcel and on the state parcel. Since the easement was created, the number and size of the utility poles, and of the overhead and underground utility lines have remained the same. No changes have occurred within the physical boundaries of the easement. There has been no impermissible replacement, removal or relocation of utility poles or lines, no improper maintenance of poles or lines, and no improper repairs of poles or lines. The plaintiff does not claim that "the mere amount or quantity of electricity passing over the easement violates the easement's terms and conditions . . . ."

The plaintiff alleges in its first count that the Science Center's use of the power line easement to supply electricity for facilities on the state parcel constitutes an unlawful trespass.

The essentials of an action for trespass are: (1) ownership or possessory interest in land by the plaintiff; (2) invasion, intrusion or entry by the defendant affecting the plaintiff's exclusive possessory interest; (3) done intentionally; and (4) causing direct injury. *Avery* v. *Spicer,* 90 Conn. 576, 579, 98 A. 135 (1916); 75 Am. Jur. 2d, Trespass §§ 3, 8, 14, 25, 35. The invasion, intrusion or entry must be physical. As stated in 75 Am. Jur. 2d, Trespass § 35, "[b]ecause it is the right of the owner in possession to exclusive possession that is protected by an action for trespass, it is generally held that the intrusion of the property be physical and acomplished by a tangible matter. Thus, in order to be liable for trespass, one must intentionally cause some 'substance' or

thing to enter upon another's land. Generally, all intangible intrusions, such as noise, odor, or light above, are dealt with as nuisance cases, not trespass."

In the present case, the passage of electricity through transmission lines on utility poles can properly fall into the category of intangible intrusion expressly permitted by the easement. Moreover, the plaintiff has not shown, nor can it, that the passage of the electricity affects its possessory interest in the land over which the lines lie or causes it any direct injury. As a consequence, its claim of trespass against the Science Center must fail as a matter of law.

The essential claim of the plaintiff in its second and third counts against the Science Center is that while the easement creates a right in the Science Center to transmit electricity to the federal parcel, it does not create a right to do so to the state parcel, and the Science Center's use of electricity in the state parcel constitutes a misuse or overburdening of the easement.

The law of easements is well established. Among the attributes of an easement are "an interest in land in the possession of another which (a) entitles the owner of such interest to a limited use or enjoyment of the land in which the interest rests; (b) entitles him to protection as against third persons from interference in such use or enjoyment; (c) is not subject to the will of the possessor of the land . . . ." Restatement (Second), Property § 450 (1994).

The owner of the easement (dominant estate) and the owner of the land over which the easement extends (servient estate) owe duties to each other measured by the terms of the easement. *Peterson* v. *Oxford,* 189 Conn. 740, 745, 459 A.2d 100 (1983). The owner of the servient estate owns all the rights and benefits of ownership consistent with the existence of the easement. *Center Drive-In Theater, Inc.* v. *Derby,* 166 Conn.

460, 464, 352 A.2d 304 (1974). The owner of an easement has all the rights incident or necessary to its proper enjoyment, but nothing more. Id., 464. The rights of each are "so limited each by the other, that there may be a reasonable enjoyment of both." *Peterson* v. *Oxford,* supra, 745.

The plaintiff rests its claim that the Science Center's use of electricity transmitted over the easement to the state parcel is a misuse and overburdening of the easement on the principle expressed in *Lichteig* v. *Churinetz,* 9 Conn. App. 406, 411, 519 A.2d 99 (1986): "An easement cannot be used for the benefit of land other than the dominant estate." The principle is applicable only, however, when the other land burdens the easement. In *Lichteig,* cars parked on the property adjacent to property for which the easement was created caused additional traffic over the easement and, accordingly, the court enjoined that use.

This meaning is clearly revealed in *Carbone* v. *Vigliotti,* 222 Conn. 216, 610 A.2d 565 (1992), in which a right-of-way ran from a lot of the defendant's (parcel 4) to a public street. The defendant added two other lots to parcel 4 and built a house on the combined parcel. The court, in holding that the right-of-way was not overburdened by its use for the new house, said that "[t]he doctrine that '[a]n easement cannot be made to attach to the other land which the owner of a dominant estate may subsequently acquire' . . . was intended to protect the servient estate from the use of an easement in a manner or to an extent not within the reasonable expectations of the parties at the time of its creation. In this case, however, the addition of parcels 2 and 3 to lot 4 in order to form a single building lot has not changed the character or the extent of the proposed use of the easement to Chestnut Street . . . . We conclude that when no significant change has occurred in the use of the easement from that con-

templated when it was created, as in this case, the mere addition of other land to the dominant estate does not constitute an overburden or misuse of the easement." Id., 225.

Similarly, in the present case, the passage of more electricity through the utility lines on the power line easement to the state parcel changes neither the character nor the extent of the easement on the plaintiff's land. In *Ragona* v. *DiMaggio,* 42 Misc. 2d 1042, 1044, 249 N.Y.S.2d 705 (1964), where the plaintiff sought to increase electric service over an easement from 115 to 220 volts and to replace with one and one-quarter inch conduit the existing three-quarter inch conduit, the court held: "Since the increase in electrical requirements of the plaintiffs' premises has arisen as the result of the normal evolution of such premises and since the increase in the burden upon defendant's premises is relatively insignificant, the court is of the opinion that the plaintiffs have the right to enlarge the user in accordance with their present requirements."

The easement here at issue is in general terms and without any limitation on its use. "Such a grant is to be construed as broad enough to permit any use which is reasonably connected with the reasonable use of the land to which it is appurtenant." *Lichteig* v. *Churinetz,* supra, 9 Conn. App. 410. Moreover, the reasonable uses of the easement by the dominant estate are not limited to those to which the land was being put when the easement was created. Id.; *Birdsey* v. *Kosienski,* 140 Conn. 403, 412–13, 101 A.2d 274 (1953).

While what constitutes the reasonable use of an easement may present an issue of fact; *Ezikovich* v. *Linden,* 30 Conn. App. 1, 5, 618 A.2d 570, cert. denied, 225 Conn. 913, 623 A.2d 1023 (1993); in the present case involving transmission of electricity along existing power lines, it clearly does not.

What the plaintiff is trying to accomplish in this litigation is to restrict the Science Center's use of the state parcel in order to preserve the view from Konover's "dream house." That purpose cannot be achieved in the present case.

The motion of the defendant Science Center for summary judgment is granted.