[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is an action of civil trespass brought by plaintiff, Mary Daly, against defendants, Sue Ann Hayes, Patricia Zito and Denise Zito. For reasons hereinafter stated, judgment is entered for the defendants.
The amended complaint alleges that plaintiff is the owner and in possession of real property in New London and that defendants own and control real property on the same street. It is further alleged that on or about July 1, 1997, defendant caused certain alterations to their property which resulted in the diversion of rain, surface and ground waters onto plaintiff's property and that this has resulted in a discharge of water onto plaintiff's property in a course which is different from the natural flow of said water. The complaint alleges that defendants' actions are unreasonable and are the proximate cause of damage to plaintiff's property. Although defendants have been notified of CT Page 8325 the discharge of waters, it is alleged that they refused and neglect to desist from the conduct alleged.
Plaintiff requests a temporary and permanent injunction restraining defendants from continuing the alterations to their property.
This case is similar in fact and law to Melin v. Richman, 96 Conn. 686
(1921) in which the court stated "a landowner cannot collect surface water in an artificial volume and turn it from its natural course in an increased volume upon his neighbor's land to his substantial injury." See also, Abington Ltd. Partnership v. Talcott Mountain Science Center,43 Conn. Sup. 424, 423 (1994) for the elements of civil trespass. This statement of the law is similar to the definition of trespass found in the Restatement of Torts. 1 Restatement (2nd, Torts § 158 (1965)). Our Supreme Court has defined trespass as "the doing of a direct injury to property by force." Lake Garda Improvement Assn. v. Battistoni,160 Conn. 503, 516 (1971).
The elements which plaintiff must prove to obtain injunctive relief are well established: "a party seeking injunctive relief has the burden of alleging and proving irreparable harm and lack of an adequate remedy at law." (Internal quotation marks omitted.) Advest, Inc. v. Wachtel,235 Conn. 559, 562-63 (1995).
From the evidence it is found that plaintiff owns and occupies residential real property at 188 Elm Street in the City of New London. Defendants own and control adjoining real property at 192 Elm Street. The residences on this part of Elm Street are built on narrow city lots with limited frontage and with each house in close proximity to the other. The ground is low laying with a covered brook running along the rear of the house lots and, in general, parallel to the street line.
Defendants' house was constructed in 1961 and was one of the first houses built on the street. At the time of construction, it was equipped with gutters and down spouts. Plaintiff's house was built some time after defendants' house. The elevation of plaintiff's building lot was one of the lowest on the street and is lower than defendants' adjoining lot.
Plaintiff, an elderly lady, used the services of a "high school boy" to cut the grass in her rear yard. She testified that in the spring of 1997 the young man reported that he was unable to cut the grass due to wet conditions in the back yard.[1]
Although plaintiff testified that the inability of the young man to mow the grass in the spring of 1997 first caused her to be aware of the wet conditions in her backyard, the evidence indicates that her complaints CT Page 8326 concerning this situation started before the spring. It is also improbable that apples would be found on the ground in the spring time.
In 1997, there were two down spouts which drained roof water from the gutters on defendants' house on the side facing plaintiff's property. One of these down spouts near the front of defendants' house received only a small portion of roof water. The other down spout was located towards the rear of defendants' house. Both of these down spouts released water in the direction of plaintiff's house. Plaintiff testified that she observed water from these down spouts seeping on to her property. She complained about this situation and retained an attorney who demanded that plaintiff rectify the condition.
Although plaintiff claims she first became aware of the problem in the spring of 1997, the evidence indicates that she began to complain to the city building department at an earlier time. As a result of these complaints, on January 8, 1997 and on many other subsequent dates, Antonio Alves, the city building officer, inspected the premises. Mr. Alves noticed the wet condition of plaintiff's rear yard and concluded that it was due to frost coming out of the ground. He determined that defendants were not in violation of any regulation or law and did not believe that the water from defendants' roof could cause the problem. Mr. Alves thought that the wet conditions were due to natural causes and the low elevation of plaintiff's back yard.
Although he doubted that it would affect the situation, in an effort to placate the plaintiff, Mr. Alves requested defendants to redirect the direction of their down spouts. Defendants complied with this request and both down spouts were redirected towards the rear of defendants' house.
Either at that time, or before, defendants had placed a cement trough under each down spout to further direct the flow of the water. Several years, prior to these events, as a result of plaintiff's complaint about a dog then being kept on defendants' premises, a stockade fence was erected at the rear of defendants' house. When the down spout at the rear of defendants' house was turned away from plaintiff's property, the cement trough leading from the down spout extended under the stockade fence.
Plaintiff claimed that she observed the water flowing from the front down spout through the trough and along the foundation of defendants' house to the area of the rear down spout. The water from the rear down spout she observed was obstructed by the stockade fence and this water, together with the water discharged from the front down spout, then unnaturally flowed directly on to her property causing the conditions complained of. CT Page 8327
Although plaintiff has correctly stated the law, from the evidence, it cannot be found that she has established her claim by a preponderance of the evidence.
The photographs in evidence show that the front down spout receives water from a very small area of defendants' roof. According to plaintiff's testimony, this water flows from the down spout through the cement trough then turns 90 degrees towards the main foundation, then turns another 90 degrees and flows along the foundation where it joins with the water from the rear down spout. Although the evidence does not permit precise conclusions as to the topography or contours of the land, plaintiff's testimony as to the direction of the flow of this small amount of water from the front down spout is not credible. The photographs in evidence show that the land tends to slope slightly away from the foundation. Plaintiff's version of the facts would have the water flow up hill with a series improbable turns. From the evidence, it cannot be found that water draining from the front down spout contributes to the wet conditions in plaintiff's rear yard.
The rear down spout does collect water from a significant area of defendants' roof. Under normal conditions, water from this down spout would pass through the cement trough and under the stockade fence. It must be concluded, that in periods of heavy rain some water draining from the roof would be obstructed by the fence and spill over out of the trough and on to the ground. This water would combine with surface waters naturally flowing on to plaintiff's low laying property. It cannot be found, however, that the volume of this water would be sufficient to affect the situation or that it could be the cause of plaintiff's problem. It is much more likely that the wet conditions in plaintiff's rear yard are caused by surface waters flowing naturally on to her land and the presence of the brook running along the rear of the property.
Accordingly, the facts haven been found against the plaintiff, judgment is rendered for the defendants.
Joseph J. Purtill, Judge Trial Referee