[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON DEFENDANT'S MOTION TO STRIKE
On July 16, 1999, the plaintiffs, residents on or near Wethersfield Cove, filed a revised complaint against the Metropolitan District Commission (MDC) alleging trespass to water (count one), trespass to land CT Page 14906 (count two), nuisance (count three), negligence (count four), recklessness (count five) and negligence per se (count six) claiming that the plaintiffs' recreational use of the cove swimming and fishing has been severely curtailed because of the alleged pollution of the water and the shoreline which has caused obnoxious odors.
On August 23, 1999, MDC filed a motion to strike counts one, two, three, five and six of the plaintiffs' revised complaint on the ground that these counts fail to allege sufficient elements of the causes of action.
The plaintiffs allege inter alia that MDC which owns and operates the Hartford Sewage Treatment Facility (Facility), and a system of sewer lines running throughout Greater Hartford has been discharging untreated sewage from a number of overflow locations along its Franklin Avenue Interceptor and that several of these locations drain into Folly Brook, a small stream, which in turn drains into Wethersfield Cove, and that hypodermic needles and used sanitary products have washed up on the shores of Wethersfield Cove. The plaintiff's claim that (1) approximately 4,000,000 gallons of untreated sewage was discharged into Folly Brook between August 17 and August 19, 1993, as a result of operator error. (2) On June 12, 1994 a sewage overflow regulator was reopened after an electric coil failed, and 563,000 gallons of untreated sewage ended up in Folly Brook and that (3) on September 17, 1997, a gate failed at a combined overflow location known as "F-3" resulting in approximately 21,000,000 gallons of untreated sewage being released into Folly Brook.
 — I —
MDC moves to strike counts one and two, each sounding in trespass; contending that count one, trespass to water, fails to state a cause of action due to the failure to allege each plaintiff's exclusive possessory interests or that the alleged invasion was intentional and that count two, trespass to land, fails to allege that the discharges were intentional or that their properties were directly injured.
The essential elements of a trespass action are: "(1) ownership or possessory interest in land by the plaintiff; (2) invasion, intrusion or entry by the defendant affecting the plaintiff's exclusive possessory interest; (3) done intentionally; and (4) causing direct injury."Abington Ltd. Partnership v. Talcott Mountain Science Center,43 Conn. Sup. 424, 427, 657 A.2d 732 (1994).
In the present case, the plaintiffs allege that untreated sewage was discharged into Folly Brook between August 17, 1993, and September 17, 1997. The three specific instances alleged by the plaintiffs are all CT Page 14907 alleged to be "accidental spills," the results of either human error or mechanical failure, not intentional acts that would support a sufficient allegation of the intent element of trespass. In addition, another essential element of a cause of action in trespass is the existence of ownership or possessory interest, yet all that the plaintiffs state in their revised complaint is that they live "near or on Wethersfield Cove" without particularizing their particular claims of possession or ownership. In an action for trespass, it is each plaintiff's burden to allege the requisite possessory or ownership interest. The allegations in count one and two which describe and plaintiffs in a class-like category, are insufficient since they do not establish that any certain, identified plaintiff has the requisite ownership or possessory interest in either the land or the water.
 — II —
MDC moves to strike count three on the ground that the plaintiffs fail to allege the requisite elements of a nuisance claim, either public or private nuisance. MDC additionally argues that the plaintiff's nuisance claim is insufficient as a matter of law because they have failed to allege any intentional conduct on its part. Plaintiffs argue that the facts alleged, that air emissions from the facility's incinerator, composting facility and wastewater treatment operations have resulted in obnoxious odors that disturb the plaintiffs' quiet use and enjoyment of their homes, are sufficient to support an action for nuisance.
Whether public or private, a nuisance describes an inherently dangerous condition that has a natural tendency to inflict injury upon persons or property. "The term nuisance refers to the condition that exists and not to the act or failure to act that creates it." Quinnett v. Newman,213 Conn. 343, 348-49, 568 A.2d 786 (1990). "[I]f the annoyance is one that is common to the public generally, then it is a public nuisance. . . . The test is not the number of persons annoyed, but the possibility of annoyance to the public by the invasion of its rights. A public nuisance is one that injures the citizens generally who may be so circumstanced as to come within its influence." Higgins v. Connecticut Light Power Co.,129 Conn. 606, 611, 30 A.2d 388 (1943). Although the plaintiffs' complaint does not explicitly state whether the plaintiffs are alleging a public or private nuisance, the plaintiffs do not appear to be alleging a public nuisance, since they do not allege that they are suing as members of the public or that the alleged conditions are interfering with a right common to the general public. Elliott v. Waterbury, 245 Conn. 385, 421,715 A.2d 27 (1998).
In order to establish a cause of action for private nuisance, four requirements must be met: "(1) the condition complained of had a natural CT Page 14908 tendency to create danger and inflict injury upon person or property; (2) the danger created was a continuing one; (3) the use of the land was unreasonable or unlawful; (4) the existence of the nuisance was the proximate cause of the plaintiffs' injuries and damages." Walsh v.Stonington Water Pollution Control Authority, 250 Conn. 443, 449 n. 4,736 A.2d 811 (1999). In addition, because MDC is a municipality, mere "negligent nonfeasance" is insufficient to establish a claim of nuisance. Keeney v. Old Saybrook, 237 Conn. 135, 164, 676 A.2d 795
(1996). In order to overcome the governmental immunity of municipal defendants the plaintiff must prove that the defendants, by some positive act, intentionally created the conditions alleged to constitute a nuisance. Elliott v. Waterbury, supra, 245 Conn. 421.
In the present case, the plaintiffs fail to allege that the odors constitute an inherently dangerous condition that has a natural tendency to create danger and inflict injury upon person or property, or that MDC intentionally created these conditions. Plaintiff's allegation that they have been subject to obnoxious odors originating from the Hartford Facility which disturb the quiet use and enjoyment of their homes is insufficient to support their claim of nuisance.
 — III —
MDC claims that count five should be stricken since the plaintiffs have failed to allege conduct that rises to the level of recklessness and that MDC is immune from liability for recklessness pursuant to General Statutes § 52-557n.
Our Supreme Court has stated that a large gap exists between recklessness and negligence and that a complaint alleging recklessness should employ language explicit enough to clearly inform the court and opposing counsel what the reckless misconduct is. Kostiuk v. Queally,159 Conn. 91, 94, 267 A.2d ___. "Simply using the word `reckless' or `recklessness' is not enough." Id. In order to establish that a defendants' conduct was reckless the plaintiff must prove, on the part of the defendant highly unreasonable conduct, involving an extreme departure from ordinary care, in a situation where a high degree of danger is apparent." Shay v. Rossi, 253 Conn. 134, 181, 749 A.2d 147 (2000).
The plaintiffs do not allege sufficient facts to establish that MDC's conduct was "highly unreasonable," "an extreme departure from ordinary care" or that "a high degree of danger was apparent." A conclusory allegation in their revised complaint that "[s]ome or all of the actions of the Defendant, as described above, were reckless, in that Defendant conducted itself with utter disregard for the consequences of its actions. . . ." is insufficient without further facts to support a claim CT Page 14909 for reckless conduct.
Further, even if the plaintiffs had pleaded sufficient facts to establish recklessness, General Statutes § 52-557n grants immunity to MDC for acts of its employees, officers or agents that amount to "wilful misconduct," which term includes recklessness. Perugini v. MetropolitanDistrict Commission, supra, 23 Conn.L.Rptr. 17.
 — IV —
In count six the plaintiffs allege that MDC's conduct was a violation of General Statutes § 22a-174-23[1] of the Regulations of Connecticut State Agencies and that therefore MDC's conduct constitutes negligence per se. MDC in moving to strike count six, argue that a violation of an administrative regulation does not give rise to a cause of action for negligence per se.
Our Appellate Court has held that a violation of a valid administrative regulation constitutes negligence per se. Heritage Village Master Assn.,Inc. v. Heritage Village Water Co., 30 Conn. App. 693, 705, 622 A.2d 578
(1993). In their revised complaint, the plaintiffs specifically allege that Metropolitan violated § 22a-174-23 by exceeding the limit of 0.0045 parts per million for 15 minute average concentrations of hydrogen sulfide. Plaintiffs are correct in asserting that a violation of §22a-174-23(C) may constitute negligence per se and that therefore count six states a sufficient cause of action.
Defendant's motion to strike counts one, two, three and five is granted, its motion to strike count six is denied.
Wagner, J. TJ