[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This case concerns a dispute between two adjacent landowners. The plaintiffs in this case, Sharon and Joseph Agnello, have brought a six-count complaint against the defendants. Armando and Maria Urbano. The allegations of the complaint center around three issues: whether or not the defendants, whose property is adjacent to the plaintiffs property, are diverting surface water directly onto the plaintiffs property; a question as to the title of a triangular piece area of land located between the plaintiffs' and the defendants' property; and a determination as to the easement rights which the plaintiffs claim across the defendants' property.
The plaintiffs filed suit on August 15, 2000. The verified complaint alleges interference with the flow of water (count one), trespass (count two), an action to settle title to the land (count three). title to an express easement (count four), title to the easement by implication (count five), and title to the easement by prescription (count six). The defendants filed a counterclaim on February 9, 2001. In the counterclaim, they seek to quiet title with respect to the common boundary line and claim trespass of their property.
From the trial testimony and evidence presented, the court finds the following facts. The Agnellos and the Urbanos currently own adjacent pieces of property, which were originally owned by one person. The Urbanos purchased the property known as 144 Cook Hill Road in November of 1987. This property fronts Cook Hill Road in Wallingford. The Agnellos purchased the rear parcel of land known as 142 1/2 Cook Hill Road in October 1988. Access to the Agnello property is by means of a twenty-five foot right-of-way for "ingress and egress" which is noted on the deeds to both properties.
Both the Agnello and the Urbano properties are downhill from a parcel of land owned by a Mr. and Mrs. Celentano, who are not parties in this case. CT Page 13470
The difficulty between the plaintiffs and the defendants began in 1999. At that time the defendants removed an old split rail fence located between the two properties and constructed a new fence. The plaintiffs believed that the new fence was moved from the original boundary line and intruded five feet onto their property. They hired a surveyor, Rosalind Page of Winterbourne Land Services, to survey their property. She verified that they were correct and that the new fence did intrude upon their property.
Around this time, the plaintiffs were having trouble with their cable television reception. When the cable company came to repair a probable break in the line, which was located underground, in the right-of-way, the defendants refused to allow them access to the cable. The poor reception has persisted to this day.
In addition, the defendants placed various materials within the 25 foot right-of-way. These materials limited access to an eight-foot paved area, thus depriving the plaintiffs use of thirteen feet of the easement.
The Agnellos testified that the utilities which service their residence have been located underground. within the right-of-way, since they purchased the property in 1998. The residence was constructed in 1980 and the court credits the uncontradicted testimony of Mrs. Agnello that the utilities have been located in the right-of-way since the home was constructed.
Because of the configuration of the three parcels of land, surface rain water from the Celentano property flowed down to and onto both the Agnello and Urbano properties. After the dispute over the split-rail fence. the defendants constructed a cinder block wall along the boundary of the Celentano property. which resulted in a deflection of the surface water onto the plaintiff's property. Simultaneously, the defendant placed boards and mulch against the new split rail fence as a barrier that prevented the diverted surface water from flowing from the Agnello property back onto the Urbano property.
As part of the initiation of this matter, the plaintiffs requested a temporary restraining order before trial. On August 21, 2000. the court,Levine, J., imposed the restraining order the defendants which specifically ordered the following: (1) immediately cease placing any mulch, fill, a cinder block barrier and any and all other obstructions which clause surface water which flow to the north to the plaintiffs property; (2) immediately cease interfering with a natural flow of the CT Page 13471 surface waters coming from the west of the parties properties; (3) immediately cease closing in. obstructing our interfering with the right-of-way and from any manner interfering or attempting to prevent the plaintiffs from passing over or using the right-of-way; (4) immediately cease interfering with the actions of the plaintiffs arising from the repair. replacement or maintenance of the driveway contained within the right-of-way; (5) immediately cease planting vegetation and trees within the right of-way; and (6) immediately cease trespassing on the plaintiffs property.
Subsequent to the granting of the restraining order, the Celentanos determined that the cinder block wall was constructed on their property and they had it removed. Without seeking court permission, the defendants rebuilt the cinder block wall along their boundary line and continued to place mulch. fill and shrubbery as an additional barrier along their boundary line along the Agnello property. In addition, the defendants placed materials within the 24 foot right-of-way.
 I. A
The court shall first determine whether the defendants wrongfully diverted surface water onto the plaintiffs' property. "Surface waters are those casual waters which accumulate from natural sources and which have not yet evaporated, been absorbed into the earth, or found their way into a stream or lake." (Internal quotation marks omitted.) Taylor v. Conti,149 Conn. 174, 178, 177 A.2d 670 (1962). "A landowner is under no duty to receive upon his land surface water from the adjacent properties, but in the use or improvement of it he may repel such water at his boundary. On the other hand, he incurs no liability by reason of the fact that surface water falling or running onto his land flows thence to the property of others in its natural manner. But he may not use or improve his land in such a way as to increase the total volume of surface water which flows from it to adjacent property. or as to discharge it or any part of it upon such property in a manner different in volume or course from its natural flow, to the substantial damage of the owner of that property."Tide Water Oil Sales Corp. v. Shimelman, 114 Conn. 182, 189-190, 158 A. 229
(1932). The first branch of Tide Water was modified slightly by the rule of reasonable use which states that "the landowner, in dealing with surface water, is entitled to take only such steps as are reasonable, in light of all the circumstances of relative advantage to the actor and disadvantage to the adjoining landowners, as well as social utility."Page Motor Co. v. Baker, 182 Conn. 484, 488-89, 438 A.2d 739 (1980). See also, Ferri v. Pyramid Construction Co., 186 Conn. 682, 685-86, CT Page 13472443 A.2d 478 (1982). "The issue of reasonableness is a question of fact to be determined on a case by case basis, considering all the relevant circumstances, including such factors as the amount of harm caused, its foreseeability, the purpose or motive with which the act was done, and the consideration of whether the utility of the use of the land outweighed the gravity of the harm resulting." Peterson v. Oxford,189 Conn. 740, 745, 459 A.2d 100 (1983).
The court finds that the defendants' actions violated the second branch of the Tide Water test. The defendants improved their land and caused the water to impermissibly flow upon the plaintiffs' property.
Moreover, even if the second branch were not violated, the court finds that the defendants did not employ a reasonable use of the surface water. The defendants only constructed the cinder block fence after the plaintiffs complained about the split rail fence. Also, the Wallingford city engineer testified that there was a method of diverting the water from the defendants' property without adversely impacting the plaintiffs' property. Accordingly, they are liable on the first branch as well.
 B
The plaintiffs have brought an action to quiet title to the triangular shaped parcel of land. "All actions to quiet title are governed by General Statutes § 47-31. the provisions of which are mandatory."Allen v. Johnson, Superior Court, judicial district of Litchfield, Docket No. CV 00 83610 (March 12, 2002, Cremins, J.). General Statutes § 47-31
provides in relevant part that "[a]n action may be brought by any person claiming title to. or any interest in. real or personal property, or both. against any person who may claim to own the property, or any part of it, or to have any estate in it. . . ." Subsection (f) of § 47-31
provides that "[t]he court shall hear the several claims and determine the rights of the parties, whether derived from deeds. wills or other instruments or sources of title, and may determine the construction of the same, and render judgment determining the questions and disputes and quieting and settling the title to the property."
In the present case, the plaintiffs have proven that they have title to the triangular parcel of property which is in dispute. The parties employed experts to determine where the boundary line existed. "It is well settled that the trier of fact can disbelieve any or all of the evidence proffered . . . including expert testimony. and can construe such evidence in a manner different from the parties' assertions." (Internal quotation marks omitted.) State v. Cuesta, 68 Conn. App. 470,483, 791 A.2d 686, cert. denied, 260 Conn. 914, 796 A.2d 559 (2002). CT Page 13473 "[T]he [fact finder] is free to accept or reject each expert's opinion in whole or in part." (Internal quotation marks omitted.) Santa Maria v.Klevecz, 70 Conn. App. 10, 16, 860 A.2d 1186 (2002).
Although both parties proffered expert testimony, it is the opinion of the court that the more credible evidence was provided by the plaintiffs expert. Rosalind Page. The court therefore finds that the boundary line between the plaintiffs' and the defendants' property is found as defined in Plaintiffs' Exhibit NN.
The defendants also filed a counterclaim seeking to quiet title. The court has found that issue in favor of the plaintiffs. Accordingly, the court finds that the defendants have failed to prove their counterclaim.
 C
The plaintiffs also have claimed a trespass. "The essentials of an action for trespass are: (1) ownership or possessory interest in land by the plaintiff; (2) invasion, intrusion or entry by the defendant affecting the plaintiffs exclusive possessory interest; (3) done intentionally; and (4) causing direct injury. . . . The invasion, intrusion or entry must be physical." (Citations omitted: internal quotation marks omitted.) Abington Ltd. Partnership v. Talcott MountainScience Center, 43 Conn. Sup. 424, 427, 657 A.2d 732 (1994). The court finds that the plaintiffs have proven all four elements of trespass.
The claimed trespass occurred when the defendants placed a fence and the mulch and materials in the triangular-shaped area of land. As discussed in Part I B, the plaintiffs had ownership of the property. The defendants intentionally placed the materials on the plaintiffs' property. first after being informed of the potential dispute over the land and, second. after the issuance of the temporary restraining order. The intrusion has caused direct injury in the form of intruding upon the plaintiffs' use of their own property. Accordingly, the defendants have committed trespass.
 D
The remaining three counts allege title to an easement under differing theories. The easement claims all concern the 25 foot right-of-way used for ingress and egress as well as for the cable utilities.
The fourth count alleges an easement conveyed by deed. The fifth count alleges easement by implication. The sixth count alleges easement by prescription. CT Page 13474
The deeds of both properties reference a "Right-of Way, 25 ft. in width for purposes of ingress and egress" over the Urbano property. It is the opinion of the court that no credible evidence provided for a deviation of this express easement of twenty-five feet for access to and from the plaintiffs property. Accordingly, the plaintiffs have proven an express easement for the purposes of "ingress and egress."
The plaintiffs have also alleged title to an easement for the purpose of utilities, specifically the underground cable line. There is no express easement, however, the plaintiffs have also claimed an easement by implication. "There are two principal factors to be examined in determining whether an easement by implication has arisen: (1) the intention of the parties; and (2) whether the easement is reasonably necessary for the use and normal enjoyment of the dominant estate." (Internal quotation marks omitted.) Gemmell v. Lee, 59 Conn. App. 572,576, 757 A.2d 1171, cert. denied, 254 Conn. 951, 762 A.2d 901 (2000). The court finds that the plaintiffs have proven both elements.
The intention of the parties is shown by the fact that the cable line has been under the easement since the construction of the plaintiffs' home. Moreover, though the defendants interfered with the repair of the cable line, they have not asked the plaintiffs to remove the cable line. The court also finds that the easement is necessary for the normal enjoyment of the dominant estate. The plaintiffs use the estate as their residence and it is normal and reasonably necessary for a residence to be allowed utilities, such as cable television.
Even if the plaintiffs had failed to prove an easement by implication, the plaintiffs have also proven an easement by prescription. "To establish an easement by prescription in accordance with General Statutes § 47-37, the plaintiff must prove the necessary elements by a preponderance of the evidence. . . . It is well settled that before a use may develop into a prescriptive easement, it must be (1) open and visible, (2) continuous and uninterrupted for fifteen years and (3) engaged in under a claim of right." (Citation omitted.) Hoffman Fuel Co.of Danbury v. Elliott, 68 Conn. App. 272, 277, 789 A.2d 1149, cert. denied, 260 Conn. 918, 797 A.2d 514 (2002).
The use of the easement for a cable line has been open and visible. As proof, when the line needed repair. the plaintiffs openly called the cable company to repair it. As for continuous and uninterrupted use for over fifteen years. the right-of-way has been used for the cable television line since 1980. Finally, the plaintiffs have shown that they believed that they had a right to the use of the easement for utilities. CT Page 13475
 II.
Finding that the plaintiffs have proven all their claims, the court makes the following orders. Because the defendants have changed the contour of the land along the boundary with the Celentano property, the defendants are ordered to install a drainage system, as described by the Wallingford city engineer, which diverts the surface water from the Celentano property to the ridge of the Urbano boundary line where the water flows down to Cook Hill Road and the public storm drain system. The defendants are permanently enjoined from diverting the natural flow of surface water onto the plaintiffs property.
The defendants are ordered to remove the split rail fence and all the materials placed in the contested triangular area this court has determined is owned by the plaintiffs. The defendants shall also restore the surface of the land to the conditions which existed prior to the installation of the split rail fence.
"[I]njunction is the proper remedy to stop interference with an owner's use and enjoyment of an easement." (Internal quotation marks omitted.) DiSorbo v. Grand Associates One Ltd. Partnership,8 Conn. App. 203, 208 n. 4, 512 A.2d 940 (1986). Accordingly. the defendants are enjoined from interfering in anyway with the plaintiffs use of the 25 foot right-of-way for entering and exiting their property and from installation and repair of utility lines. The defendants are further ordered to reimburse the plaintiffs for all cable bills incurred since the date the defendants prohibited the plaintiffs from repairing the cable line.[1]
Because this relief makes the plaintiffs whole, the court declines to order damages for the trespass. The court notes that, as to this injunctive relief, it has continuing jurisdiction over the matter. SeeAvalonbay Communities v. Planning Zoning Commission, 260 Conn. 232,240-246, 796 A.2d 1164 (2002); Adams v. Vaill, 158 Conn. 478, 482,262 A.2d 169 (1969). If the defendants fail to timely comply with the orders of this court, the plaintiffs may file an appropriate motion on the matter.
The Court
by Gilardi, J.