[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION Re Motion for Summary Judgment #103
Based on the admissions of the parties, the following facts are undisputed. The plaintiffs, Kenneth Benson and Patricia Benson (Bensons), are the owners of real property known as 27 Great Oak Lane, Redding, Connecticut. The defendant, town of Redding (town), owned, maintained, possessed and controlled underground gas storage tanks, lines and dispensers located at, on and under 28 Great Oak Lane, Redding, Connecticut (town garage).
In November 1989, upon investigating a smell of gasoline in the area, the town discovered that one or more of the underground tanks at the town garage was leaking. Upon becoming aware of this leak, the town removed the leaking tank and installed monitoring wells, an interceptor trench and a pump and filtration system in the Bensons' home to monitor and remediate possible contamination. The town also tested the water at the Bensons' property in December 1989, and found the MTBE level, a gasoline constituent, to be 140 parts per billion (ppb), the state action level being 70 ppb.
According to the town and based on the affidavit of Doug Hartline, health officer for the town (Hartline), the remediation continued for ten years. The MTBE level inside the Benson home was immediately non-detectable due to the filtration system installed in the home, while the MTBE levels in the Bensons' well dropped to the level of non-detectable over the course of the ten-year period. In September 1999, at the direction of their environmental consultant and pursuant to Department of Environmental Protection procedures, the town turned off the remediation devices to see if MTBE levels in the well would rise again. The levels did rise and the system was turned back on in January 2000. The filter in the Benson home was never turned off during this test and no contamination was found in their tap water. A second shutoff test was scheduled for December 12, 2001.
The Bensons commenced this action on December 14, 2001, by service of CT Page 1930 process on the town's first selectman. In their five-count complaint, the Bensons assert causes of action against the town for negligence, trespass to land, creation of a private nuisance, violation of General Statutes § 22a-16 and negligence per se. The town responded to the complaint with an answer and four special defenses including, inter alia, that the Bensons' claims are barred by statutes of limitation, governmental immunity for intentional acts and the municipal exception to nuisances that are not created by the positive acts of the municipality. The town then filed this motion for summary judgment asserting all five counts are barred by the applicable statutes of limitation, the trespass claim is barred because the town is immune from claims of intentional misconduct and the nuisance claim is barred because there is no evidence that the town engaged in affirmative conduct that caused a nuisance. The town filed a memorandum of law and an affidavit from Hartline in support of its motion. The plaintiffs have not submitted a memorandum or any evidence in opposition.
"The motion for summary judgment is designed to eliminate the delay and expense of litigating an issue when there is no real issue to be tried."Wilson v. New Haven, 213 Conn. 277, 279, 567 A.2d 829 (1989). "Practice Book [§ 17-49] provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law . . . In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party . . . The party seeking summary judgment has the burden of showing the absence of any genuine issue [of] material facts which, under applicable principles of substantive law, entitle him to a judgment as a matter of law . . . and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact. Practice Book [§ 17-46] . . . A material fact . . . [is] a fact which will make a difference in the result of the case." (Citation omitted; internal quotation marks omitted.) H.O.R.S.E. of Connecticut, Inc. v.Washington, 258 Conn. 553, 559-60, 783 A.2d 993 (2001). "The existence of the genuine issue of material fact must be demonstrated by counter affidavits and concrete evidence." (Internal quotation marks omitted.)Pion v. Southern New England Telephone Co., 44 Conn. App. 657, 663,691 A.2d 1107 (1997). "If the affidavits and the other supporting documents [submitted in opposition to the motion] are inadequate, then the court is justified in granting the summary judgment, assuming that the movant has met his burden of proof." (Internal quotation marks omitted.) Barile v. Lenscrafters, Inc., 74 Conn. App. 283, 285,811 A.2d 743 (2002). When a party files a motion for summary judgment "and there [are] no contradictory affidavits, the court properly CT Page 1931 [decides] the motion by looking only to the sufficiency of the [movant's] affidavits and other proof." Heyman Associates No. 1 v. Ins. Co. ofPennsylvania, 231 Conn. 756, 795, 653 A.2d 122 (1995).
 I
The town contends that its motion for summary judgment should be granted as to all five counts of the complaint because there are no genuine issues of material fact as to the dates in question and all the Bensons' claims are barred by the statutes of limitation found in General Statutes §§ 52-577, 52-577c, and 52-584. "Summary judgment may be granted where the claim is barred by the statute of limitations." Dotyv. Mucci, 238 Conn. 800, 806, 679 A.2d 945 (1996). Summary judgment is appropriately granted on the grounds of the statute of limitations when, "material facts concerning the statute of limitations [are] not in dispute . . ." Burns v. Hartford Hospital, 192 Conn. 451, 452,472 A.2d 1257 (1984).
As to the Bensons' claims for trespass, nuisance and violation of General Statutes § 22a-16,[1] "[t]he three-year limitation of 52-577
is applicable to all actions founded upon a tort which do not fall within those causes of action carved out of 52-577[2] and enumerated in 52-584
(for negligence) or another section. " (Internal quotation marks omitted.) Travelers Indemnity Co. v. Rubin, 209 Conn. 437, 441,551 A.2d 1220 (1988). "When conducting an analysis under § 52-577, the only facts material to the trial court's decision on a motion for summary judgment are the date of the wrongful conduct alleged in the complaint and the date the action was filed." (Internal quotation marks omitted.) Id., 159. "The three year limitation period of § 52-577
begins with the date of the act or omission complained of, not the date when the plaintiff first discovers an injury." Collum v. Chapin,40 Conn. App. 449, 451, 671 A.2d 1329 (1996). Accordingly, the court grants the summary judgment as to the Bensons' claim that the town violated § 22a-16.
In addition, however, as to the Bensons' nuisance claim, "[w]hether a nuisance is permanent or temporary is also relevant for purposes of the statute of limitations . . . In nuisance actions it is important, for statute of limitations purposes, to ascertain whether the invasion or interference is permanent or continuous . . . If the injury or wrong is classified as temporary, the limitation period starts to run only when the plaintiff's [property is] actually harmed, and for purposes of the statute of limitations, each injury causes a new cause of action to accrue, at least until the injury becomes permanent . . . This rule is especially applicable if the situation involves elements of uncertainty, CT Page 1932 such as the possibility or likelihood of the alteration or abatement of the causative condition . . . The rule is predicated upon the defendant's ability and duty to abate the existing conditions which constitute the nuisance . . . The characterization of a nuisance is not necessarily dependent on whether the conduct that caused the nuisance has ceased. [T]he life of an absolute nuisance exists as long as the nuisance lasts. When one creates such a nuisance is of no moment. As long as it exists, each instant of its continuance makes its creator liable for the injuries it occasions . . . Courts consider not only the permanent or temporary nature of the damages, but also the permanent or temporary nature of the causative factor, so each case must be considered in its own factual setting . . . Whether contamination by toxic waste is a permanent or continuing injury is ordinarily a question of fact turning on the nature and extent of the contamination." (Internal quotation marks omitted.)Blackburn v. Miller-Stephenson Chemical Co., Superior Court, judicial district of Danbury, Docket No. CV93 0314089 (September 11, 1998, J. Leheny).
Similarly although, "[a] statute which establishes a limitations period in an action for trespass to real property [generally] commences running at the occurrence of the first actual damages . . . [w]here a trespass is a continuing one, and not of that class of permanent appropriations to be assessed for all time at once, there may be successive actions for each continuance of the trespass . . . A continuing trespass upon real property creates separate causes of action, which are barred only by the running of the statute against the successive trespasses, and not by the running of the statute from the time of the original trespass." (Citations omitted; internal quotation marks omitted.) Id.
Here, the town has not presented evidence that establishes whether the conduct that forms the basis of the plaintiffs' trespass and nuisance claims was continuing or permanent in nature. Therefore genuine issues of material fact exist as to when the statutes of limitations begin to run, and summary judgment as to these causes of action on the basis of statutes of limitation is improper.
As to the Bensons' causes of action for negligence and negligence per se, "General Statutes § 52-584 is the statute of limitations applicable in an action to recover damages for injury to the person or property caused by negligence . . . That statute imposes two specific time requirements on prospective plaintiffs. The first requires a plaintiff to bring an action within two years from the date when the injury is first sustained or discovered or in the exercise of reasonable care should have been discovered . . . The second provides that in no event shall a plaintiff bring an action more than three years from the date of the act CT Page 1933 or omission complained of . . . The statutory clock on this three year time limit begins running when the negligent conduct of the defendant occurs." (Internal quotation marks omitted.) Johnson v. North Branford,64 Conn. App. 643, 648, 781 A.2d 346, cert. denied, 258 Conn. 926,783 A.2d 1028 (2001).[3]
It is undisputed that the town discovered contamination in November 1989. According to Hartline's affidavit the Bensons were notified of the leak immediately and contamination was found on their property on January 17, 1990. The Bensons did not commence this action until ten years after the contamination was brought to their attention and clearly outside of all three limitations periods. Moreover the Bensons' arose from a single act or omission, the leaking gasoline tank, and the facts do not suggest that the limitations period should be tolled by the continuing course of conduct doctrine. See Blanchette v. Barrett, 229 Conn. 256, 275,640 A.2d 74 (1994). Accordingly, the Bensons' claims for negligence and negligence per se are barred by the statute of limitations.
 II
The town moves for summary judgment as to the Bensons' trespass to land claim on the additional grounds that this is an intentional tort and the Bensons cannot show that the town engaged in intentional conduct and General Statutes § 52-557n, abrogates governmental immunity only for negligent acts.
"The essentials of an action for trespass are: (1) ownership or possessory interest in land by the plaintiff; (2) invasion, intrusion or entry by the defendant affecting the plaintiff's exclusive possessory interest; (3) done intentionally; and (4) causing direct injury."Abington Ltd. Partnership v. Talcott Mountain Science Center for StudentInvolvement, Inc., 43 Conn. Sup. 424, 427, 657 A.2d 732,11 Conn.L.Rptr. 349
(1994). "[I]n order to be liable for trespass, one must intentionally cause some substance or thing to enter upon another's land." (Internal quotation marks omitted.) Id., 427-28.
There is no evidence that the town committed any intentional act that caused the gasoline to leak and contaminate the Bensons' well water. Based on Hartline's affidavit and the complaint, it is undisputed that the leak was below ground and unknown to any of the parties until a smell of gasoline in a nearby stream alerted the town to the problem. Although the Bensons allege that the town acted intentionally they do not provide any evidence or even allege any facts to support this allegation. InCoggins v. Waterbury, Superior Court, judicial district of Waterbury, Docket No. CV 01 0163783 (July 12, 2001, Doherty, J.), the court CT Page 1934 entertained a similar action in which the plaintiff alleged that the city was negligent in the care and inspection of its sewage system and allowed sewage to leak onto the plaintiff's property. The court granted the defendant's motion to strike the trespass count because, "[t]he plaintiff does not allege any facts that the defendant acted intentionally or that it acted with the knowledge that there was a substantial certainty that sewage would enter her property."
Furthermore the doctrine of governmental immunity shields the town from this claim because General Statutes § 52-557n, only abrogates governmental immunity for negligent acts.[4] "[T]he general rule developed in our case law is that a municipality is immune from liability for negligence unless the legislature has enacted a statute abrogating that immunity." Williams v. New Haven, 243 Conn. 763, 766-67, 707 A.2d 1251
(1998). "The legislature . . . set forth general principles of municipal liability and immunity in General Statutes § 52-557n." Id., 767. "Subsection 52-557n (a) (2) (A) excludes municipal liability for intentional misconduct." Windham v. Leclair, Superior Court, judicial district of Windham at Putnam, Docket No. CV 96 0054223 (February 25, 1999, Sferrazza, J.).
The motion for summary judgment is therefore granted on the Bensons' cause of action in trespass because there is no evidence of intentional conduct and the doctrine of governmental immunity shields the town from this claim.
 III
The town moves for summary judgment as to the Bensons' nuisance claim on the additional ground that a nuisance requires evidence of a condition which is continuing and the plaintiff cannot show a continuing condition. "[A] plaintiff must prove four elements to succeed in a nuisance cause of action: (1) the condition complained of had a natural tendency to create danger and inflict injury upon person or property; (2) the danger created was a continuing one; (3) the use of the land was unreasonable or unlawful; [and] (4) the existence of the nuisance was the proximate cause of the plaintiffs' injuries and damages." (Internal quotation marks omitted.) Pestey v. Cushman, 259 Conn. 345, 355,788 A.2d 496 (2002).
As stated previously, the town has not conclusively established that a continuing nuisance did not exist. Although the Bensons allege the original contamination most likely occurred as a result of the leaking gas tank discovered in 1989, and Hartline's affidavit shows that this condition was fixed in 1990, when the leaking tank was removed from the CT Page 1935 ground, it does not necessarily follow that the nuisance ended at that point.
In the alternative, the town argues, even if a nuisance exists, the Bensons do not provide evidence that the town engaged in affirmative conduct that caused the gasoline to leak. The Bensons allege that the town was negligent in the care and maintenance of the tanks, and municipalities are not liable for nuisance arising from mere negligent non-feasance. "[I]n order to overcome the governmental immunity of municipal defendants where it applies, the plaintiff must prove that the defendants, by some positive act, intentionally created the conditions alleged to constitute a nuisance." Elliott v. Waterbury, 245 Conn. 385,421, 715 A.2d 27 (1998).
The legislature apparently abrogated this general principle, however, in General Statutes § 52-557n (b), which provides in part; "(b) Notwithstanding the provisions of subsection (a) of this section, a political subdivision of the state or any employee, officer or agent acting within the scope of his employment or official duties shall not be liable for damages to person or property resulting from: . . . (8) failure to make an inspection or making an inadequate or negligent inspection of any property, other than property owned or leased by or leased to such political subdivision, to determine whether the property complies with or violates any law or contains a hazard to health or safety, unless the political subdivision had notice of such a violation of law or such a hazard or unless such failure to inspect or such inadequate or negligent inspection constitutes a reckless disregard for health or safety under all the relevant circumstances; (9) failure to detect or prevent pollution of the environment, including groundwater, watercourses and wells, by individuals or entities other than the political subdivision. " Accordingly, the court denies the motion for summary judgment as to nuisance.
For the foregoing reasons, the town's motion for summary judgment is granted as to counts one, two, four and five of the Bensons' complaint and denied as to count three.
White, J.